# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ARTY PRICE, § | | |
|    Petitioner, § | | |
| § | | |
| V. § | A-18-CV-00557-RP | |
| § | | |
| DIRECTOR, TDCJ-CID, § | | |
|    Respondent. § | | |

## ORDER

Petitioner Arty Price is pro se in this matter and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) and his Memorandum in Support (ECF No. 1-2), and Respondent's Answer (ECF No. 9). For the reasons set forth below, Petitioner's Application for Writ of Habeas Corpus is **denied**.

## STATEMENT OF THE CASE

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 26th District Court of Williamson County, Texas. A jury found Petitioner guilty of aggravated assault of a family member resulting in serious bodily injury and assessed a sentence of 65 years in prison.

**A. Background**

The Third Court of Appeals summarized the facts presented at Petitioner's trial as follows:

> In August 2013, police responded to an emergency call and found the victim, Migdalia Pena, in the care of her neighbors. Pena had severe injuries requiring immediate medical attention. At trial, Pena testified that Price, her live-in boyfriend at the time of the offense, caused her injuries by punching, kicking, and choking her, as well as pressing his body weight on top of her. Pena further testified that she managed to escape the house and sought help from her neighbors. Pena's neighbor, Greg White, testified that he and his family found Pena lying on the ground near their garage. White also testified that Price drove up and said, "You need to get her to the hospital," and, "My death is on your hands." The State also presented evidence that

> Price was later arrested and that a sandal that he was wearing at the time of arrest bore a distinctive pattern that was also found on Pena's face where Price had allegedly kicked her. . . .

*Price v. State*, No. 03-14-00567-CR, 2016 WL 3577510, at *1 (Tex. App.–Austin 2016, pet. ref'd).

Petitioner was initially represented by retained counsel, Mr. Sims. (ECF No. 10-38 at 27). On May 22, 2014, Mr. Sims was given leave to withdraw and Mr. Bass was appointed as Petitioner's counsel. (ECF No. 10-38 at 28).[1] Mr. Bass represented Petitioner at trial, which began August 4, 2014. (ECF No. 10-13 at 3). The defense's theory was that Pena's injuries were actually caused by Ezequiel Astacio, who was Pena's husband at the time of the offense. *Price*, 2016 WL 3577510, at *1. Petitioner did not testify at the guilt or punishment phase of his trial, although his wife testified for the defense at both phases of his trial. (ECF No. 10-21 at 98).

After Petitioner's conviction, Mr. Bass filed a motion for a new trial, asserting insufficiency of the evidence. (ECF No. 10-38 at 93-94). Mr. Bass then withdrew and Mr. Payan was appointed as appellate counsel. (ECF No. 10-38 at 28). Mr. Payan filed a supplemental motion for a new trial, asserting Mr. Bass was ineffective at trial. (*Id.*). Mr. Bass filed an affidavit addressing Petitioner's claims of ineffective assistance. (ECF No. 10-11 at 3-4). The motion for a new trial was overruled by operation of law.

---

[1] Mr. Sims withdrew when the State indicated it would seek a life sentence, noting Petitioner was indigent and could not afford to retain an investigator or mitigation experts, and that Mr. Sims had never represented a defendant in a trial involving a first-degree felony offense. (ECF No. 10-15 at 5-6). At that time, with regard to a plea offer, the State told the trial court:
> . . . as the Court's well aware, we've been waiting on medical records in this case to come in. We had never – we've never offered a formal offer to the defendant or Defense counsel. We had talked about, depending on the offense circumstances, I think I had represented to Defense counsel that I would – if 30 or 40 was countered to us, that I would certainly take that to the victim in the case. But we've never formally made an offer. I guess today we would offer life, but I don't expect the defendant to jump on that. But, yeah, we've never made a formal offer on the case, and I don't think we will.

(ECF No. 10-15 at 6).

Petitioner, through Mr. Payan, took an appeal asserting trial court error. *Price*, 2016 WL 3577510, at *1. The Third Court of Appeals overruled Petitioner's claims of error and affirmed his conviction and sentence. *Id.* at *4. Mr. Bass died approximately three months later. (ECF No. 10-38 at 29).

Petitioner sought a state writ of habeas corpus, alleging he was denied the effective assistance of trial counsel. (ECF No. 10-37 at 11-22, 26-118). The habeas trial court, which was not the convicting court, made findings of fact and recommended the writ be denied. (ECF No. 10-38 at 27-35). The habeas trial court concluded Petitioner's claims were procedurally barred because he had presented his habeas claims in his motion for a new trial, and the Third Court of Appeals had denied his claim that the motion for a new trial "should have been granted." (ECF No. 10-38 at 31). The habeas court further concluded Petitioner presented "only new arguments and interpretations of recycled claims." (*Id.*). The Court of Criminal Appeals denied the application without written order. (ECF No. 10-35).

**B. Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1. He was denied the effective assistance of counsel because Mr. Bass failed to investigate, resulting in an unreasonable trial strategy;

2. He was denied the effective assistance of counsel because Mr. Bass failed to investigate Petitioner's mental health and pursue an insanity defense;

3. He was denied the effective assistance of counsel because Mr. Bass failed to present mitigating evidence at the punishment phase; and

4. He was denied the effective assistance of counsel because Mr. Bass failed to consult with Petitioner regarding trial strategy.

**C. Exhaustion of State Court Remedies**

Respondent allows the petition is timely and not successive. (ECF No. 9 at 4). Respondent does not contest that Petitioner exhausted his state court remedies regarding the claims brought in this application, nor does Respondent argue the claims are procedurally defaulted. A review of the state court records submitted by Respondent shows that Petitioner properly raised these claims in previous state court proceedings.

## ANALYSIS

**A. The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but

4

unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted).

The Court of Criminal Appeals denied the habeas application without written order and apparently did not adopt the state habeas court's conclusion that the claims were procedurally defaulted. Because the Court of Criminal Appeals denied the claims rather than dismissing them, it is presumed the denial was on the merits. Where, as here, the state-court's denial of a petitioner's claims is unexplained, a federal habeas court reviews the state court's "ultimate decision" for reasonableness. *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018), *petition for cert. filed,* (Sep. 20, 2018) (No. 18-380). The federal habeas court "must hypothesize the reasons that supported, or could have supported, the denial consistent with Supreme Court precedent. The decision is an 'unreasonable application' under 28 U.S.C. § 2254(d) only if, after this hypothetical inquiry, we determine there was no reasonable basis for it." *Id.* (internal citations omitted).

**B. The *Strickland* Standard**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an ineffective assistance of counsel claim, the petitioner must establish counsel's performance was deficient and the deficient performance prejudiced the defense. *Id.* at 687. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). Unless the petitioner demonstrates both deficient performance and prejudice, it "cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. When considering a state court's application of *Strickland*, the Court's review must be "doubly

5

deferential," to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015), *citing Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

**C. Merits**

**1. Failure to investigate**

Petitioner argues Mr. Bass failed to investigate his case, resulting in the unreasonable selection of an identity defense. (ECF No. 1-2 at 6-11). Mr. Bass filed an affidavit addressing Petitioner's claims in the state court:

> In his affidavit Mr. Price states that he first met me in Court on July 28, 2014, and that he first talked to me about the facts of his case on August 3, 2014, the Sunday before trial began. These statements are not true. I am not sure of the exact dates but I had several lengthy meetings with Mr. Price at the Williamson County Jail. In those meetings we discussed his case and matters relevant thereto at length and in detail. The strategy pursued at trial was based on information provided to me by Mr. Price in those interviews, and information obtained through discovery, including photographs, witness statements, police reports, and hospital records. In his affidavit Mr. Price states that on August 3, 2014, he instructed me to pursue a strategy set forth in a letter written by Mr. Price to his previous attorney, Jody Sims. He also states that after my opening statement to the jury at trial he told me to stop pursuing a strategy that the victim's husband had injured her, and again admonished me to pursue a strategy outlined by him in a letter to Jody Sims. These statements are not true. Mr. Price never made any such statements to me.

(ECF No. 10-11 at 3-4).

Petitioner's claim that counsel failed to investigate is belied by the record in this matter. Counsel's strategy was to challenge Ms. Pena's credibility and highlight the absence of sufficient other evidence that Petitioner was her assailant. (ECF No. 10-21 at 29-43).[2] A thorough review of the record and trial transcript indicates this was a plausible defense strategy based on Mr. Bass's thorough investigation of Petitioner's case. The record indicates the trial was continued at Mr. Bass's

---

[2] In his memorandum Petitioner details the extensive evidence against him and the only alternative defense he mentions is insanity. (ECF No. 1-2).

request to allow him additional time to investigate the allegations against Petitioner. (ECF No. 10-16 at 4). Mr. Bass's familiarity with the facts and evidence is evidenced by his cross-examination of the State's witnesses and his opening and closing arguments.

Counsel is not required to investigate when he has "reason to believe that pursuing certain investigations would be fruitless or even harmful," and when any information that might be discovered would be of only collateral significance. *Trevino v. Davis*, 829 F.3d 328, 349 (5th Cir. 2016), *cert. denied*, 138 S.Ct. 1793 (2018). Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). That a trial strategy does not succeed does not render counsel's decision to pursue it unconstitutionally deficient performance. *Strickland*, 466 U.S. at 689; *Jones v. Butler*, 837 F.2d 691, 693-94 (5th Cir. 1988).

Petitioner fails to overcome the presumption that his trial counsel's defensive strategy was within the wide range of reasonable professional assistance. Furthermore, Petitioner is unable to show prejudice arising from counsel's alleged errors. Petitioner does not offer any support for his conclusion that an insanity defense was plausible and he fails to show any reasonable probability this defense strategy would have resulted in an acquittal. Accordingly, because Petitioner has not met his burden of demonstrating his counsel's performance was deficient or that he was prejudiced by counsel's alleged errors, the state court's denial of relief on this claim was not an unreasonable application of *Strickland*. *See Livingston v. Johnson*, 107 F.3d 297, 307 (5th Cir. 1997).

**2. Failure to investigate and pursue an insanity defense**

Petitioner argues counsel was deficient for failing to investigate his mental health and pursue an insanity defense. (ECF No. 1-2 at 12-16). Petitioner alleges Mr. Bass should have reviewed jail

7

medical records and sought out and interviewed "anyone who had contact with petitioner after his arrest, [and] request an insanity evaluation from the court to evaluate petitioner's mental condition at the time of the offense . . ." (ECF No. 1-2 at 12). He argues counsel was "on notice" that Petitioner suffered from mental illness as evidenced by Williamson Count Jail "Suicide Watch Sheets" dated September 10 and October 7, 2013. (ECF No. 1-3 at 22-23). Counsel addressed this claim in the context of Petitioner's motion for a new trial, stating he "did not request the appointment of an investigator or an expert to review Mr. Price's sanity or his competency. In my opinion such requests were not warranted by the facts and circumstances of the case." (ECF No. 10-11 at 4).

Counsel is not required to investigate when he has "reason to believe that pursuing certain investigations would be fruitless or even harmful," and when any information that might be discovered would be of only collateral significance. *Trevino*, 829 F.3d at 349. Counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. *See also Trottie v. Stephens*, 720 F.3d 231, 243-44 (5th Cir. 2011) (finding counsel's decision to not assert a self-defense argument reasonable); *Green v. Johnson*, 116 F.3d 1115, 1122-23 (5th Cir. 1997) (finding counsel's decision to not offer an insanity defense reasonable). Counsel had no obligation to assert a meritless insanity defense if, after proper investigation, he determined that a more viable defense was available. *Martinez v. Dretke*, 404 F.3d 878, 888 (5th Cir. 2005).

Petitioner fails to show counsel's decision to forgo an insanity defense was based on an inadequate investigation or that it was an unreasonable choice of trial strategy. The Suicide Watch Sheets are dated several months after Petitioner's crime and, therefore, they do not establish Petitioner had a mental illness at the time of his crime. Furthermore, counsel's statement that he had

8

no reason to question Petitioner's sanity is supported by the record. When denying Petitioner's challenge to the denial of his motion for a new trial, the Third Court of Appeals noted:

> [D]uring his arraignment outside the presence of the jury, the trial court asked Price, "Have you ever had any mental problems?", to which Price responded, "No, sir, Your Honor." The court then asked Price's counsel whether he believed Price was competent to stand trial, counsel responded in the affirmative, and Price did not indicate that he disagreed with counsel's assessment.

*Price*, 2016 WL 3577510, at *4 n.3.

Nor has Petitioner shown that an insanity defense was plausible or that such a defense would have resulted in an acquittal. The Texas Court of Criminal Appeals could reasonably conclude that Petitioner failed to demonstrate either deficient performance or prejudice with regard to Mr. Bass's alleged error in asserting an insanity defense. Therefore, the state court's denial of this claim was not an unreasonable application of *Strickland*.

### 3. Failure to present mitigating evidence

Petitioner alleges his trial counsel was ineffective for failing to present mitigating evidence during the punishment phase. (ECF No. 1 at 7; ECF No. 1-1 at 16-23). He asserts counsel "failed to unreasonably investigate Petitioner's mental illness for the penalty phase for purposes of mitigation." (ECF No. 1-2 at 16). Petitioner contends counsel failed to interview:

> family member[s] who were available and ready to testify to good character, assist with background information and facts about Petitioner's sexual abuse, this information was also part of defendant's probation record had counsel investigated that. His work ethic and other things like: How [h]e was hit in the head with a hammer. How he became a Muslim and changed his name and was engaged to the young lady who the extraneous offense came from. How that untrue accusation of rape affected him deeply as they went through it with him and had even meet the parent[s of the victim] and could have testified about the extraneous offense, directly and hearsay. Even how he went through depression dealing with the after effect[s] and how it affected his life, liberty and business dealing. The affects [sic] of the

9

> deaths of his mother, grandmother who he lived with for a while. And his father and nephew who had not long died before the incident

(ECF No. 1-2 at 18).

Mr. Bass responded to these allegations when raised in the motion for a new trial as follows:

> Mr. Price states in his affidavit that he provided me with the names and contact information of witnesses he wanted to be called at trial on his behalf. He states that I failed to call any of these witnesses. This statement is not true. In our conversations I questioned Mr. Price about potential witnesses that I might call on his behalf. He suggested only that I contact his wife, Melody Price. Mr. Price suggests in his affidavit that I never communicated with Melody Price and that she showed up on her own. This is not true. I did contact Melody Price, interviewed her, obtained an agreement for her to appear at trial to testify at both the guilt-innocence stage of trial and punishment phase . . .

(ECF No. 10-11 at 4).

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)). A petitioner who alleges ineffective assistance of counsel based on the failure to call either a "lay or expert witness" must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). Absent a showing that a particular witness would have offered testimony favorable to the defense, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

Petitioner has not made the showing required by *Gregory* and *Day*. The bulk of the facts Petitioner alleges should have been offered in mitigation by the uncalled witnesses, such as the circumstances surrounding Petitioner's guilty plea to sexual abuse of a minor and the death of family members prior to the crime, were actually established by Petitioner's wife's testimony and by counsel's cross-examination of the State's witnesses at sentencing. (ECF No. 1-2 at 20-23; ECF No. 10-22). Counsel is not ineffective for failing to present insufficiently described, cumulative, or strategically omitted testimony. *Trottie*, 720 F.3d 244. Furthermore, if the "failure" to present mitigation evidence is based on well-informed strategic decisions, it is within the range of professional choices by counsel to which a federal habeas court must defer. *Martinez v. Dretke*, 404 F.3d 878, 890 (5th Cir. 2005); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992); *Ortiz v. Livingston*, 420 F. Supp. 2d 670, 706 (W.D. Tex. 2006).

Additionally, when a petitioner alleges ineffective assistance of counsel in a noncapital sentencing context, a reviewing court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh. *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008). "The *Strickland* prejudice inquiry in this context [takes] into account such factors as . . . the potential minimum and maximum sentences that could have been received, [and] the placement of the actual sentence within the range of potential sentences . . ." *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011) (internal quotations and citations omitted). Petitioner was sentenced to 65 years' imprisonment for aggravated assault resulting in serious bodily injury of his girlfriend; the jury was instructed to assess a sentence between 5 to 99 years or life imprisonment. (ECF No. 10-9 at 106). The jury was presented with evidence that Petitioner pulled Ms. Pena to the floor, hit her in the face with his fists, pinned her to

the floor with his body weight, choked her and threatened to kill her, and then "stomped" on her. (ECF No. 10-19 at 159-62). Ms. Pena sustained numerous injuries requiring emergency and follow-up surgeries, including facial fractures and lacerations of her intestines. (ECF No. 10-19 at 177-82, 194-95). At sentencing, the jury heard evidence that in 1998 Petitioner pleaded guilty to having a consensual sexual relationship with a 16-year-old girl, who became pregnant, and he was sentenced to a term of eight years deferred adjudication. (ECF No. 10-21 at 78-80). Mr. Bass did succeed in introducing some testimony that this relationship was conducted with the assent of the girl's parents. (ECF No. 10-21 at 99-108).

Petitioner fails to demonstrate that his punishment would have been significantly less harsh if the mitigation evidence he cites would have been presented. Habeas petitioners must affirmatively prove prejudice to succeed on a *Strickland* claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Strickland*, 466 U.S. at 693; *Chanthakoummane v. Stephens*, 816 F.3d 62, 69 (5th Cir.), *cert. denied sub nom. Chanthakoummane v. Davis*, 137 S. Ct. 280 (2016). Conclusory allegations of prejudice are insufficient to obtain habeas relief on an ineffective assistance of counsel claim. *Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008); *Green*, 160 F.3d at 1041. Because Petitioner has not shown counsel's failure to present additional mitigation evidence was either deficient performance or prejudicial, the state court's denial of this claim was not an unreasonable application of *Strickland*.

**4. Ineffective assistance - failure to consult with Petitioner regarding trial strategy**

Petitioner alleges Mr. Bass failed to consult with him on trial strategy. (ECF No. 1-2 at 23). Petitioner makes the conclusory allegation that Mr. Bass "denied Petitioner's objective which was to mitigate the charge with an insanity defense and if that failed present mitigating evidence to try to minimize punishment." (ECF No. 1-2 at 26).

As previously noted, Mr. Bass addressed these claims in his affidavit:

> I had several lengthy meetings with Mr. Price at the Williamson County Jail. In those meetings we discussed his case and matters relevant thereto at length and in detail. The strategy pursued at trial was based on information provided to me by Mr. Price in those interviews, and information obtained through discovery, including photographs, witness statements, police reports, and hospital records.

(ECF No. 10-11 at 3-4).

Counsel has a duty to consult with their client regarding important decisions, however, that obligation does not require counsel to obtain the defendant's consent to every tactical decision. *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). A criminal defendant necessarily surrenders to counsel the authority to make a wide range of strategic and tactical decisions regarding the case, other than decisions regarding the exercise or waiver of basic trial rights, such as "'whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.'" *Nixon*, 543 U.S. at 187 (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action. *Id.* However, what arguments to pursue at trial is a decision by trial counsel to which a federal habeas court must defer. *See id.* at 188-89; *McCoy v. Louisiana*, 138 S. Ct. 1500, 1507-09 (2018) (discussing what decisions must be the defendant's and what decisions are within counsel's discretion regarding strategy); *Gonzalez v. United States*, 553 U.S. 242, 249-50 (2008).

Petitioner provides only his own conclusory statements to support his allegation that counsel did not consult Petitioner regarding trial strategy and that he was prejudiced by this failure. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be

of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). A conclusory allegation does not raise a constitutional issue in a habeas proceeding. *Id.* at 1012. Petitioner has not established that Mr. Bass's decisions on trial strategy were so ill chosen that they permeated the entire trial with obvious unfairness. Mr. Bass developed a reasonable defense theory, filed legitimate pretrial motions, vigorously cross-examined witnesses, and made difficult strategic decisions about how best to defend Petitioner. The court must defer to counsel's choices when they are the result of a "conscious and informed decision on trial tactics." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003) (giving deference to decision not to present two witnesses as part of counsel's decision to pursue a different defense); *Green*, 116 F.3d at 1121-23 (discussing counsel's decision not to present an expert defense witness after choosing a different course of strategy). Although a court may question some of the tactical decisions made by Petitioner's counsel, a habeas court may not second-guess counsel's strategic decisions merely because an alternative course of action existed during trial. *Pape*, 645 F.3d at 291; *Green*, 116 F.3d at 1122. The record contains sufficient evidence to demonstrate that counsel's strategic decisions were informed and fell within the wide range of trial tactics that constitute reasonable assistance. *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). Accordingly, the state court did not unreasonably apply *Strickland* to these claims.

## **CONCLUSION**

Petitioner has not established that his counsel's performance was deficient or that he was prejudiced by counsel's alleged errors. Accordingly, the Texas Court of Criminal Appeals' denial of relief on his ineffective assistance of counsel claims was not an unreasonable application of *Strickland*.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right "in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court shall not issue a certificate of appealability.

It is therefore **ORDERED** that the Application for Writ of Habeas Corpus [ECF No. 1], is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on October 22, 2018.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE